UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEWEL PATHWAY LLC,

                Plaintiff,

    – against –

POLAR ELECTRO INC.,

                Defendant.

**OPINION & ORDER**

20 Civ. 4108 (ER)

RAMOS, D.J.:

    Jewel Pathway LLC ("Jewel") brought this suit alleging patent infringement against Polar Electro Inc. ("Polar"). Doc. 1. Pending before the Court is Polar's motion to dismiss, in which Polar asserts that the patent at issue is invalid for claiming patent-ineligible subject matter under 35 U.S.C. § 101. Doc. 26.

    For the following reasons, Polar's motion is GRANTED.

## I. BACKGROUND

### A. Factual Background

    Jewel is a Texas corporation and maintains its principal place of business in the state. Doc. 25 ¶ 1. Relevant here, Jewel owns, by assignment, all rights, title, and interests in the patent at issue, United States Patent No. 8,818,711 (the "'711 Patent"), including all rights to enforce and prosecute actions for infringement of the patent and to collect damages against any infringers. *Id.* ¶ 7. The '711 Patent was filed on December 18, 2009 and issued on August 26, 2014. *Id.* ¶ 8. Polar is a New York corporation that maintains its principal place of business in the state. *Id.* ¶ 2.

    This dispute centers around the '711 Patent, which is entitled "3D Path Analysis for Environmental Modeling." Doc. 25-1 at col. 1:1–2. The specification explains that, although advances in GPS technologies allow people to use digital maps that are presented in mapping applications, those "digital maps are often limited to existing

roadways and are often unable to dynamically adapt to changing roadway conditions." *Id.* at col. 1:13–18.  Moreover, the specification notes that, "[a]lthough mapping applications may be able to identify the location of a user using GPS technologies, they are unable to provide mapping capabilities that do not follow existing roads." *Id.* at col. 1:21–24.  According to the specification, although some mapping applications rely on satellite imagery, that solution is still based on existing roadways, and satellite imagery is often out of date, is at an insufficient image resolution, and makes it difficult for users to distinguish between impassible features and elevation changes.  *Id.* at col. 1:33–41.  The specification notes that this problem is particularly acute in areas such as parks and public walkways.  *Id.* at col. 1:41–44.

According to Jewel, the '711 Patent provides a technical solution to the problem of generating a traversable path without using traditional maps.  Doc. 25 ¶ 14.  According to the specification, "[l]ocation data is collected from location-enabled devices operating in an area.  The location data is then analyzed to determine or identify paths that the devices traversed."  Doc. 25-1 at col. 2:15–18.  In turn, "[t]he location data can be processed to determine traversable paths that can be provided to other devices, for example as maps or superimposed on existing maps."  *Id.* at col. 2:18–21.  Over time, according to the specification, "[t]he location data collected from location-enabled devices provides a crowd-sourced multi-dimensional map of traversable space."  *Id.* at col. 2:41–43.

Claim 1 of the '711 Patent states that it provides "[a] method to construct a path analysis in an area," asserting that the method comprises of:[1]

---

[1] The Court notes that Jewel asserts claims 1, 2, 6, 12, 16, and 17 of the '711 Patent.  However, Polar asserts that claim 1 is representative, and Jewel does not dispute that position nor argues the substance of any limitations except for claim 1.  Moreover, in its Second Amended Complaint, Jewel relies on only the language of claim 1 to represent the language of its asserted claims.  *See* Doc. 25 ¶ 12.  Accordingly, the Court concludes that claim 1 is representative of all of Jewel's asserted claims, *see In re Rosenberg*, 813 F. App'x 594, 595 & n.1 (Fed. Cir. 2020), and need only consider this claim in its analysis, *see Island Intell. Prop., LLC v. StoneCastle Asset Mgmt. LLC*, 463 F. Supp. 3d 490, 495 (S.D.N.Y. 2020) (citing *Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 F. App'x 989, 991 (Fed. Cir. 2018)).

>receiving a first set of location data from a first mobile device, the first set of location data comprising multiple data points of physical locations traversed by the first mobile device that represent a first path in an area traversed by the first mobile device;
>
>generating, using a processor, a traversable path based on the first set of location data without using traditional maps, the traversable path following a non-predetermined path that at least partially does not adhere to predetermined paths identified in the traditional maps and including a portion that deviates from the first path traversed by the first mobile device determined based on differences between the first set of location data and one or more second sets of location data from one or more second mobile devices, the one or more second sets of location data comprising multiple data points of physical locations traversed by the one or more second mobile devices in the area traversed by the first mobile device;
>
>superimposing the traversable path onto a map; and
>
>packaging the map for delivery or display of the map at a device.

*Id.* at col. 15:64–16:22.

Figure 5 of the '711 Patent provides a flow diagram illustrating the method described in claim 1:



Figure 5

*Id.* at 8; *see also id.* at col. 10:8–9.

### B. Procedural History

Jewel filed the instant suit on May 29, 2020, alleging that Polar directly and contributorily infringed the '711 Patent, and induced infringement of the '711 Patent by selling products to its customers for use in their products that infringed the patent. Doc. 1. On August 24, 2020, Jewel filed its First Amended Complaint. Doc. 13. On October 23, 2020, Jewel filed its Second Amended Complaint, maintaining the same cause of action as in its prior complaints. Doc. 25.

On November 12, 2020, Polar filed the instant motion to dismiss. Doc. 26.

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). However, this "flexible plausibility standard" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 & n.3 (2d Cir. 2007) (quotation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). Indeed, "the purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv,* 644 F.3d 122, 130 (2d Cir. 2011) (quotations omitted). Thus, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). In considering a Rule 12(b)(6) motion, a district court may also consider "documents attached to the complaint as exhibits[] and documents incorporated by reference in the complaint." *Doe v. N.Y. Univ.*,

5

No. 20 Civ. 1343 (GHW), 2021 WL 1226384, at *10 (S.D.N.Y. Mar. 31, 2021) (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)).

"Patent eligibility, a question of law often involving subsidiary factual questions, can be decided on a motion to dismiss 'when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law.'" *Pers. Beasties Grp. LLC v. Nike, Inc.*, 341 F. Supp. 3d 382, 386 (S.D.N.Y. 2018) (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)), *aff'd*, 792 F. App'x 949 (Fed. Cir. 2020) (per curiam); *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).

### III.   DISCUSSION

Section 101 of the Patent Act allows inventors to obtain patents on "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. "The provision, however, 'contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable.'" *SAP*, 898 F.3d at 1166 (quoting *Alice Corp. Pty. Ltd. v. CSL Bank Int'l*, 573 U.S. 208, 216 (2014)). To determine whether a patent claim falls within this exception, the Supreme Court has set forth a two-step framework for analyzing a claim:

> (1) whether the claim is "directed to a patent-ineligible concept," *i.e.*, a law of nature, natural phenomenon, or abstract idea, and, if so, (2) whether the elements of the claim, considered "both individually and as an ordered combination," add enough to "transform the nature of the claim into a patent-eligible application."

*In re Rosenberg*, 813 F. App'x 594, 596 (Fed. Cir. 2020) (quoting *Alice*, 573 U.S. at 217–18).

1. *Alice* Step One

"The inquiry at [the] first stage looks at the 'focus' of the claims, and their 'character as a whole.'" *Id.* (quoting *Enfish, LLC v. Microsoft Corp*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)). The Federal Circuit has "explained that claims focused on

6

'collecting information, analyzing it, and displaying certain results of the collection and analysis' are directed to an abstract idea." *SAP*, 898 F.3d at 1167 (quoting *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016)). Moreover, "even if a process of collecting and analyzing information is 'limited to particular content' or a particular 'source,' that limitation does not make the collection and analysis other than abstract." *Id.* at 1168 (quoting *Elec. Power*, 830 F.3d at 1353); *see also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (holding that limiting idea to mobile phones "does not make the claims any less abstract for the step 1 analysis"). Notably, the Federal Circuit has "treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category." *Rosenberg*, 813 F. App'x at 596 (quoting *Elec. Power*, 830 F.3d at 1354); *see also SAP*, 898 F.3d at 1167. "And 'merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis.'" *SAP*, 898 F.3d at 1167 (quoting *Elec. Power*, 830 F.3d at 1354).

By contrast, "[i]n the context of computerized systems, claims 'purporting to improve the functioning of the computer itself, or improving an existing technological process might not succumb to the abstract idea exception.'" *Island Intell. Prop., LLC v. StoneCastle Asset Mgmt. LLC*, 463 F. Supp. 3d 490, 495 (S.D.N.Y. 2020) (quoting *Enfish*, 822 F.3d at 1335). Nevertheless, "it is not enough that a patent invoke a computer 'merely as a tool' to execute an otherwise unpatentable idea." *Id.* (quoting *Enfish*, 822 F.3d at 1336).

Polar argues that the '711 Patent recites an abstract idea that renders the patent invalid, emphasizing that, at bottom, the '711 Patent claims are directed to the ineligible concept of collecting information of a specified content, analyzing that information, and displaying the results of that analysis. Jewel responds that Polar's arguments about the

7

'711 Patent strip the claims of all limiting detail and inventive concepts, describing the claims at a level of abstraction that would render nearly any concept patent ineligible. According to Jewel, the claims describe specific techniques for generating a path traversal without relying on traditional maps. Jewel further argues that, because the claims provide specific improvements to path-traversal techniques and the specification implements those improvements with limiting detail, the '711 Patent steers clear of the purely functional and poorly described language that have rendered other patents invalid. *See, e.g.*, *TLI Commc'ns*, 823 F.3d at 612.

The Court agrees with Polar. While not "every claim involving the collection, organization, manipulation, or display of data is necessarily directed to an abstract claim," representative claim 1 is not meaningfully distinct from claims that the Federal Circuit has held were directed to abstract ideas. *See Move, Inc. v. Real Est. All. Ltd.*, 721 F. App'x 950, 954 (Fed. Cir. 2018).

For example, in *Electric Power*, the court held ineligible claims that were directed at optimally managing an electric power grid at a central location. 830 F.3d at 1356. Specifically, the claimed method asserted the idea of receiving data streams from geographically distinct locations of an electric power grid, analyzing those data streams in real time to determine power grid vulnerability, and displaying the results of and diagnoses from that analysis. *Id.* at 1351–52. Noting that the claims were clearly focused on merely presenting the results of the abstract processes of collecting and analyzing information, without more, the court concluded that the claims were directed to an abstract idea. *Id.* at 1353, 1356.

The court reached the same conclusion in *Rosenberg*. 813 F. App'x at 597. In that case, the patent at issue described a method to collect performance-related data from remote clinical trials, to analyze that data on a central computer, and to report on whether any adjustments should be made to the clinical trial. *Id.* at 595–97. The court emphasized that, "[b]ecause the purported advance 'is a process of gathering and

analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions,' the claimed method is directed to an abstract idea." *Id.* at 597 (quoting *Elec. Power*, 830 F.3d at 1354).

The Federal Circuit's decision in *SAP* is even more on point. There, the patent at issue described systems and methods for performing certain statistical analyses of investment information. *SAP*, 898 F.3d at 1163. The specification of that patent described aspects of existing investment practices that the plaintiff deemed in need of improvement, stating that conventional financial information websites "'perform rudimentary statistical functions' that 'are not useful to investors in forecasting the behavior of financial markets because they rely upon assumptions that the underlying probability distribution function . . . for the financial data follows a normal or Gaussian distribution," and asserting that such assumptions were generally false. *Id.* at 1163–64. As such, according to the patent, conventional statistical analyses understated the true risk and overstated the potential rewards for a given investment strategy. *Id.* at 1164. To address those alleged deficiencies, the patent proposed a technique that utilized resampled statistical methods for the analysis of financial data—such as the bootstrap, jackknife, or cross-validation methods—which did not assume a normal probability distribution. *Id.* at 1164, 1169. By way of example, the patent described the bootstrap method, which estimates the distribution of data in a sample space by repeated sampling of the data in the pool, and noted that a sample space could be defined by selecting a specific investment or a particular period of time. *Id.* at 1164. The patent then noted that data samples were drawn from the sample space "with replacement," meaning that samples were drawn from the sample space and then returned to the broader data pool before the next sample was drawn. *Id.* The patent also described using a bias parameter to specify the degree of randomness in the resampling process, and stated that, in order to perform a resampled statistical analysis, a client could specify a number of parameters, including an

9

investment portfolio to be analyzed, a financial function, a sample size, a period, a type of plot, and a bias parameter that controlled the randomness of the resampling process. *Id.*

Specifically, two of the claims in the patent at issue in *SAP* addressed methodology. *See id.* at 1164–65. The first claim read:

> A method for calculating, analyzing and displaying investment data comprising the steps of:
>
> (a) selecting a sample space, wherein the sample space includes at least one investment data sample;
>
> (b) generating a distribution function using a resampled statistical method and a bias parameter, wherein the bias parameter determines a degree of randomness in a resampling process; and,
>
> (c) generating a plot of the distribution function.

*Id.* at 1164 (internal citation omitted). The second claim read:

> A method for providing statistical analysis of investment data over an information network, comprising the steps of:
>
> (a) storing investment data pertaining to at least one investment;
>
> (b) receiving a statistical analysis request corresponding to a selected investment;
>
> (c) receiving a bias parameter, wherein the bias parameter determines a degree of randomness in a resampling method; and,
>
> (d) based upon investment data pertaining to the selected investment, performing a resampled statistical analysis to generate a resampled distribution.

*Id.* at 1165 (internal citation omitted). Despite the focus of the claims on methodology and the additional details provided in the specification, the Federal Circuit still concluded that the claims at issue were directed to an abstract idea because they were focused on

"selecting certain information, analyzing it using mathematical techniques, and reporting or displaying the results of the analysis." *Id.* at 1167.

And the Federal Circuit reached the same conclusion in *OIP Technologies, Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015). In that case, the court considered a claim reciting a price-optimization method, with the following limitations:

> (1) testing a plurality of prices; (2) gathering statistics generated about how customers reacted to the offers testing the prices; (3) using that data to estimate outcomes (i.e. mapping the demand curve over time for a given product); and (4) automatically selecting and offering a new price based on the estimated outcome.

*Id.* at 1361. The court concluded that the "concept of offer-based price optimization" was an abstract economic concept and that the patent's claims recited merely "'well-understood, routine[,] conventional activities,' either by requiring conventional computer activities or routine data-gathering steps." *Id.* at 1362–63 (quoting *Alice*, 573 U.S. at 225).

As in the above referenced cases, the claims here focus on collecting, analyzing, and displaying data. Jewel asserts that Polar has contorted the elements of the asserted claims by describing them at a high level of abstraction, but the '711 Patent describes itself in precisely that manner. Indeed, Figure 5—which the '711 Patent describes as "a flow diagram of an illustrative embodiment of a method for determining a traversable path"—outlines the following steps: (1) receiving location data, (2) determining a path from the location data, (3) superimposing the path on a map, and (4) packaging that map for a display on a device. Doc. 25-1 at 8 & col. 10:8–9. Those steps, as reflected in the language of representative claim 1, describe the same pattern that the Federal Circuit has consistently held to constitute an abstract idea that is not patent eligible. *See, e.g.*, *SAP*, 898 F.3d at 1167.

11

Nor is the Court convinced by Jewel's argument that the '711 Patent describes a particular technique for creating a traversable path. *See* Doc 25-1 at col. 3:28–45. As Polar notes, what Jewel characterizes as the "generating limitation" in representative claim 1 is merely the second step of the patent's abstract idea—*i.e.*, analyzing the collected data to determine a traversable path. *See id.* at col. 16:4–19. Again, the Federal Circuit has "treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category.'" *Rosenberg*, 813 F. App'x at 596 (quoting *Elec. Power*, 830 F.3d at 1354).

Moreover, displaying the results of an analysis does not make an abstract idea patentable. *See Elec. Power*, 830 F.3d at 1354 (collecting cases). To that end, and as Polar notes, the Federal Circuit has consistently affirmed district courts that have found that a patent that collects data, analyzes or manipulates that data, and displays results on a map is also directed to an abstract idea. *See Location Based Servs., LLC v. Niantic, Inc.*, 295 F. Supp. 3d 1031, 1047–48 (N.D. Cal. 2017), *aff'd*, 742 F. App'x 506 (Fed. Cir. 2018) (per curiam) (receiving a request for a specific map, determining information about the requested locations based on rules associated with the location, and communicating on the map whether a person may or may not enter the location based on those rules); *Concaten, Inc. v. AmeriTrak Fleet Sols., LLC*, 131 F. Supp. 3d 1166, 1173–75 (D. Colo. 2015), *aff'd*, 669 F. App'x 571 (Fed. Cir. 2016) (per curiam) (collecting location data from snow plows, processing that information on a central server, and providing a map and instructions for a snow plow operator based on the information); *see also Move, Inc.*, 721 F. App'x at 952, 955 (using a computer to locate and display available real estate properties). Thus, the Court concludes that the focus of the claims, as reflected in representative claim 1, "is on selecting certain information, analyzing it using mathematical techniques, and . . . displaying the results of the analysis. That is all abstract." *SAP*, 898 F.3d at 1167; *see also Elec. Power*, 830 F.3d at 1353.

Further, the '711 Patent nowhere identifies, and the Court cannot discern in the specification, any specific improvement to the way computers or mobile telephones operate. *See Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) (quoting *Enfish*, 822 F.3d at 1336). The Federal Circuit's analysis in *University of Florida* is instructive. In that case, the court examined a patent describing a method for receiving physiological treatment data from at least two bedside machines, converting that data, performing at least one programmatic action with that data, and presenting results from that action on a bedside graphical user interface. *Id.* at 1366. The court noted that the claimed method employed "any serial connection . . . that can convey information as a serial data stream." *Id.* at 1368 (internal citation omitted). Moreover, the claimed programmatic action could "be performed using 'any kind of computer system or other apparatus,' including a 'general-purpose computer system.'" *Id.* (alteration and internal citation omitted). Based on those descriptions, the court concluded that the technology mentioned was described in purely functional terms, rendering the idea abstract. *Id.*

Here, the focus of the claims is not any improved device or network, and the specification makes clear that off-the-shelf technology is able to carry out the patent's mathematical analysis. *See id.*; *see also SAP*, 898 F.3d at 1168. Indeed, the '711 Patent notes that "[a] typical data processing system may be implemented utilizing any suitable commercially available components, such as those generally found in data computing/communication and/or network computing/communication systems." Doc. 25-1 at col. 12:10–14. Moreover, the patent provides that any "computer-readable instructions can be executed by a processer of a mobile unit, a network element, and/or any other computing device." *Id.* at col. 11:1–3. The patent also states that "[t]here are various vehicles by which processes and/or systems and/or other technologies described herein can be effected (e.g., hardware, software, and/or firmware), and that the preferred vehicle will vary with the context in which the processes and/or systems and/or other

13

technologies are deployed." *Id.* at col. 11:9–14.  And notably, the patent further emphasizes that "any two components herein combined to achieve a particular functionality can be seen as 'associated with' each other such that the desired functionality is achieved, irrespective of architectures or intermedial components." *Id.* at col. 12:23–27.

Thus, "the focus of the claims is not a physical-realm improvement but an improvement in wholly abstract ideas—the selection and mathematical analysis of information, followed by reporting or display of the results." *SAP*, 898 F.3d at 1168.  Accordingly, "the claims are directed not to an improvement in cellular telephones but simply to the use of cellular telephones as tools in the aid of a process focused on an abstract idea.  That is not enough to constitute patentable subject matter." *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016).  Because the '711 Patent "fails to provide any technical details for the tangible components, . . . instead predominately describ[ing] the system and methods in purely functional terms," the Court holds that, at *Alice* step one, representative claim 1 is directed to the abstract idea of "collecting, analyzing, manipulating, and displaying data," and must proceed to *Alice* step two.  *Univ. of Fla.*, 916 F.3d at 1368 (quoting *TLI Commc'ns*, 823 F.3d at 612).

2. *Alice* Step Two

At step two of the *Alice* analysis, the Court must "search for an 'inventive concept.'  The 'inventive concept' may arise in one or more of the individual claim limitations or in the ordered combination of the limitations." *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed Cir. 2016) (quoting *Alice*, 573 U.S. at 217); *see also Island*, 463 F. Supp. 3d at 498.  However, "that inventive concept must offer 'significantly more than the abstract idea itself, and cannot simply be an instruction to implement or apply the abstract idea on a computer.'" *Island*, 463 F. Supp. 3d at 498 (quoting *BASCOM*, 827 F.3d at 1349).  To that end, any limitations or other additional features "must be more than 'well-understood, routine, conventional

14

activity.'" *Affinity Labs*, 838 F.3d at 1262 (quoting *Mayo Collaborative Servs. v. Prometheus Laboratories, Inc.*, 566 U.S. 66, 79 (2012)).

Jewel argues that, even if the claims in the '711 Patent are directed to an abstract idea, the claims still provide an inventive concept that satisfies *Alice* step two. Jewel again emphasizes that its asserted method—generating a traversable path that does not rely on map data—is unconventional and not present in the prior art, and that the claims provide a concrete method.

The Court disagrees that the claims assert an inventive concept. At bottom, Jewel argues that the novelty of its abstract idea is the inventive concept that renders the idea patent eligible. But again, an inventive concept must offer significantly more than the abstract idea itself. *See id.*; *see also Rosenberg*, 813 F. App'x at 597–98 (citing *Alice*, 573 U.S. at 217). Indeed, "[a] claim for a *new* abstract idea is still an abstract idea." *Rosenberg*, 813 F. App'x at 598 (quoting *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1351 (Fed. Cir. 2016)); *see Affinity Labs*, 838 F.3d at 1263 (emphasizing that novelty "does not avoid the problem of abstractness"). Further, according to the '711 Patent itself, most of the steps in the claims cannot even be described as novel; as the specification notes, for the processing step, "an interpolation can be performed to obtain one (or more) traversable path(s) . . . using [mathematical] techniques such as those that are well known in the art." Doc. 25-1 at col. 5:32–35. As the Federal Circuit has made clear, "[t]hat some of the . . . steps were not previously employed in [the] art is not enough—standing alone—to confer patent eligibility upon the claims at issue." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014); *see also Affinity Labs*, 838 F.3d at 1263.

The reasoning in *University of Florida*—where the patent at issue described a method of collecting and processing medical data from bedside machines—further supports the Court's conclusion. The Federal Circuit emphasized that, rather than describing how a "particular arrangement of elements was a technical improvement over

15

prior art," *Univ. of Fla.*, 916 F.3d at 1369 (alteration omitted) (quoting *BASCOM*, 827 F.3d at 1350), the patent at issue provided that it could be realized "'in a centralized fashion in one computer system or in a distributed fashion' or '[a]ny kind of computer system or other apparatus adapted for carrying out the methods described herein,'" *id.* (internal citation omitted). The court emphasized that "claims like these that 'merely recite the abstract idea . . . along with the requirement to perform it on . . . a set of generic computer components' do not contain an inventive concept." *Id.* (quoting *BASCOM*, 827 F.3d at 1350). Here, and as noted in the step-one analysis, the '711 Patent similarly relies on generic components to implement its abstract idea. Thus, it is "fair to say that an invocation of already-available" technology that is not itself "plausibly asserted to be an advance, for use in carrying out improved mathematical calculations, amounts to a recitation of what is 'well-understood, routine, [and] conventional.'" *SAP*, 898 F.3d at 1170 (quoting *Mayo*, 566 U.S. at 73).

Still, Jewel points to the Federal Circuit's analysis in *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019) to argue that claims in the '711 Patent sufficiently describe the unconventional nature of its mapping application—namely, avoiding reliance on established roads and maps—to survive a motion to dismiss. In particular, Jewel emphasizes the court's statement that, "[a]s long as what makes the claims inventive is recited by the claims, the specification need not expressly list all the reasons why [a] claimed structure is unconventional." *Id.* at 1317. But the problem with the '711 Patent is not that Jewel has failed to aver novelty or unconventionality. Rather, and as just discussed, the claims here do nothing more than assert an abstract idea that relies on generic components for its implementation. *See SAP*, 898 F.3d at 1170.

Finally, Jewel contends that granting Polar's motion would be improper, noting that "[t]he question of whether a claim element or combinations of elements is well-understood, routine and conventional . . . is a question of fact," and that purportedly inventive features, "to the extent they are captured in the claims, create a factual dispute

16

regarding whether the invention describes well-understood, routine, and conventional activities." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368, 1369 (Fed. Cir. 2018).  But as the *Berkheimer* court also emphasized, "not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry," and nothing in its "decision should be viewed as casting doubt on the propriety" of the many cases that resolved patent eligibility on a motion to dismiss.  *Id.* at 1368; *see also SAP*, 898 F.3d at 1166 ("Like other legal questions based on underlying facts, this question may be, and frequently has been, resolved on a Rule 12(b)(6) . . . motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law.")  Again, the claims asserted here fall precisely within the same pattern of cases where courts have deemed a patent ineligible on a motion to dismiss:  the claims are directed to the abstract idea of collecting, analyzing, and displaying data and rely on well-known mathematical algorithms and generic technological components for implementation.

The Court therefore concludes that the elements of representative claim 1 do not contain an inventive concept sufficient to transform the nature of the claim into a patent-eligible application.  *See Rosenberg*, 813 F. App'x at 596 (citing *Alice*, 573 U.S. at 217).  Accordingly, the '711 Patent also fails step two of the *Alice* analysis, and the Court must dismiss Jewel's suit.

## IV. CONCLUSION

For the foregoing reasons, Polar's motion is GRANTED.  Because amendment would be futile, Jewel is denied leave to amend.  *See Island*, 463 F. Supp. 3d at 501.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 26, and close the case.

It is SO ORDERED.

Dated: August 16, 2021
 New York, New York

EDGARDO RAMOS, U.S.D.J.